**No. 26-4687**

---

In the United States Court of Appeals
for the Ninth Circuit

---

Plaintiffs in Whaley Action, No. 1:23-CV-00457,
Plaintiffs—Appellants,
v.
United States of America,
Defendant—Appellee.

---

Appeal from the United States
District Court for the District of Hawaii
Case No. 1:22-cv-00457-LEK-KJM
Case No. 1:22-cv-00397-LEK-KJM
Case No. 1:24-cv-00059-LEK-KJM

---

# Appellants' Opening Brief

---

Lyle Hosoda
Hosoda Law Group
3 Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, HI 96813
(808) 524-3700

Frederick C. Baker
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000

Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, TX 77002
(713) 364-6640

Kristina S. Baehr
Just Well Law, PLLC
2606 W 8th Street, Unit 2
Austin, TX 78703
(512) 994-6241

Counsel for Appellants

# Table of Contents

Table of Authorities ........ iv

Jurisdictional Statement ........ 1

Issues Presented ........ 2

Statement of the Case ........ 3

I. Facts ........ 3

A. Civilian federal employees released jet fuel from Red Hill into the Navy's drinking-water system. ........ 3

B. The contaminated water reached the Plaintiffs' homes and surrounding civilian communities. ........ 4

C. The Plaintiffs were off duty and using the water for ordinary family life when they were exposed. ........ 5

D. The exposure injured the Plaintiffs and displaced their families. ........ 6

II. Procedural Posture ........ 6

A. Injured servicemembers brought FTCA claims. ........ 6

B. The complaint pleads injuries incident to everyday life. ........ 7

C. The district court held that *Feres* bars all relief. ........ 7

Summary of the Argument ........ 8

Argument ........ 11

I. *Feres* does not bar Plaintiffs' claims. ........ 12

A. The totality of circumstances—especially *Johnson* factor four—shows that these injuries are not "incident to service." ........ 14

1. The "nature of the activity" factor opposes applying *Feres*. ........ 15

i. Plaintiffs were engaged in ordinary civilian household activity. 16

ii. The district court defined the relevant activity at the wrong level of generality. 17

iii. These claims do not implicate protected military judgment or discipline. 18

2. The "place of the tort" factor opposes applying *Feres.* 19

i. Red Hill's location bears little relationship to Plaintiffs' military service. 19

ii. The district court applied this factor too mechanically. 21

3. The "duty status" factor opposes applying *Feres*. 22

i. Plaintiffs were off duty and engaged in ordinary family life. 23

ii. Active-duty status cannot substitute for a service-related activity. 23

4. The "service benefits" factor opposes applying *Feres*. 26

i. The relevant housing and water were not exclusive military benefits. 26

ii. Civilian access is central to the inquiry. 28

iii. Post-injury military benefits do not control the analysis. 29

B. Precedent shows that these injuries are not "incident to service." 30

1. *Johnson* (9th Cir. 1983) supports Plaintiffs' claims. 30

2. *Dreier* (9th Cir. 1997) supports Plaintiffs' claims. 31

3. *Schoenfeld* (9th Cir. 2007) supports Plaintiffs' claims. 32

4. *Spletstoser* (9th Cir. 2022) supports Plaintiffs' claims. ............ 33

5. *Green* (9th Cir. 1993) supports Plaintiffs' claims. .................... 34

6. Out of circuit cases do not control. ......................................... 35

C. The district court erred by driving a plaintiff-focused inquiry with government-focused facts. ................................................................ 37

D. Applying *Feres* here proves too much. ............................................ 39

E. *Feres* should not be extended. ........................................................ 40

Conclusion ................................................................................................ 42

# Table of Authorities

## Cases

*Bon v. United States*,
802 F.2d 1092 (9th Cir. 1986) .................................................... 29

*Brooks v. United States*,
337 U.S. 49 (1949) .................................................................27, 41

*Clendening v. United States*,
19 F.4th 421 (4th Cir. 2021) ...................................................... 35

*Costo v. United States*,
248 F.3d 863 (9th Cir. 2001) ................................................ 29, 40

*Dreier v. United States*,
106 F.3d 844 (9th Cir. 1997).......................................11, 12, 21, 31, 32

*Feres v. United States*,
340 U.S. 135 (1950) ..........................................................*passim*

*Green v. Hall*,
8 F.3d 695 (9th Cir. 1993) ......................................................34, 35

*Gros v. United States*,
232 F. App'x 417 (5th Cir. 2007) ............................................... 35

*Johnson v. United States*,
704 F.2d 1431 (9th Cir. 1983). ..............................................*passim*

*McConnell v. United States*,
478 F.3d 1092 (9th Cir. 2007). ............................................. 29, 40

*Spletstoser v. Hyten*,
44 F.4th 938 (9th Cir. 2022) ................................................*passim*

*Schoenfeld v. Quamme*,
492 F.3d 1016 (9th Cir. 2007). .............................................................*passim*

*United States v. Brown*,
348 U.S. 110 (1954) ........................................................................... 8

*United States v. Johnson*,
481 U.S. 681 (1987) ........................................................................... 8

*United States v. Shearer*,
473 U.S. 52, 57 (1985) .......................................................................

**Statutes**

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1346 ...............................................................................1, 12

28 U.S.C. §§ 2671 ................................................................................ 1

## Jurisdictional Statement

28 U.S.C. § 1346(b)(1) supplies the district court's subject-matter jurisdiction because this action involves personal injury and property claims against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680.

28 U.S.C. § 1291 supplies this Court's appellate jurisdiction because a timely notice of appeal, filed July 17, 2026, challenged the "Judgment in a Civil Case" entered as Document 338 on May 20, 2026, 1-ER-2, and all orders merged therein, which constitutes a final decision as to Appellants.

## Issues Presented

1. Whether *Feres v. United States*, 340 U.S. 135 (1950), bars this complaint's Federal Tort Claims Act claims.

## Statement of the Case

This appeal arises from the Navy's contamination of the drinking water used by nearly 1,000 active-duty servicemembers in Hawai'i. The alleged negligence was operational: civilian federal employees released jet fuel from the Navy's Red Hill Bulk Fuel Storage Facility into the Joint Base Pearl Harbor – Hickam water system that served both military and civilian communities. Plaintiffs were exposed while *off duty* at home drinking, cooking, showering, and caring for their families. The United States moved to dismiss Plaintiffs' claims under *Feres*, arguing that these household injuries were "incident to service." The district court agreed, held that all four *Johnson* factors favored the Government, dismissed the First Amended Complaint for lack of subject-matter jurisdiction, and entered judgment for the United States.

### I. Facts

#### A. Civilian federal employees released jet fuel from Red Hill into the Navy's drinking-water system.

Nearly 1,000 active-duty service members were injured when jet fuel released from the Navy's Red Hill Bulk Fuel Storage Facility entered the water they used at home. 2-ER-143; 3-ER-192–93. They comprise the Plaintiffs in *Whaley* Action, No. 1:23-CV-00457, *see* Dkt. 2.1, referred to henceforth as Plaintiffs.

Red Hill is a large fuel-storage complex at Joint Base Pearl Harbor-Hickam. The Navy also operated the water system supplying the surrounding community and facilities, including family housing operated through a public-private venture. 3-ER-197–98. That system served roughly 93,000 people, including service members and civilians. 3-ER-192.

The contamination followed two operational failures at Red Hill. First, a civilian federal employee failed to follow the required valve sequence during a fuel-transfer operation, releasing approximately 19,000 gallons of jet fuel into the facility's retention system. 3-ER-198–99 (May 2021). Then, another federal civilian employee operating a train cart struck a pipe containing fuel from the earlier release. The pipe ruptured, and thousands of gallons of fuel entered the aquifer and well underlying Red Hill that supplied the water to the drinking-water system. 3-ER-192, 199–200 (November 2021). The tortfeasors were not uniformed servicemembers and were not in the Plaintiffs chain of command. 3-ER-192, 199.

### B. The contaminated water reached the Plaintiffs' homes and surrounding civilian communities.

The contamination traveled from Red Hill into the Plaintiffs' homes. Most of those homes were off base in areas accessible to the general public. 3-ER-193. Colonel Jessica Whaley, for example, lived with her family in the off-base Aliamanu Military Reservation community. 3-ER-219. Chief Petty Officer Brian Jessup and Petty

Officer First Class Dustin Wallace lived with their families in off-base Radford Terrace; the complaint specifically alleges that Radford Terrace was accessible to civilians. 3-ER-227, 229. More broadly, the family-housing communities included civilian residents, and the same Navy water line served civilian water users. 2-ER-114–15.

### C. The Plaintiffs were off duty and using the water for ordinary family life when they were exposed.

The Plaintiffs were not performing military duties when the contaminated water reached them. They were off duty, many were on Thanksgiving holiday leave, and they were not acting under orders or participating in military-sponsored activities or recreation. 3-ER-193. They were drinking, showering, bathing children, cooking, and cleaning in their family homes. *Id.*

The representative allegations illustrate the point. Major Amanda Feindt used the water for drinking, bathing, and cooking while on Thanksgiving leave. 3-ER-221. Chief Warrant Officer Elizabeth Thompson-Watson used it to cook, shower, and clean while on holiday leave. 3-ER-224. Chief Jessup likewise spent the Thanksgiving leave period at home with his family, unaware of the contamination. 3-ER-227. Petty Officer Wallace and his family became ill on Thanksgiving night before receiving notice of the fuel leak. 3-ER-229.

### D. The exposure injured the Plaintiffs and displaced their families.

The Navy did not announce that jet fuel had been detected in the water system until December 2, 2021—twelve days after the November 20 release. 3-ER-209. Until then, Plaintiffs continued using the contaminated water in ordinary family life without knowing that fuel had entered the system. 3-ER-196, 209, 221, 227, 229.

The complaint alleges resulting illness, displacement, economic loss, and psychological harm. 3-ER-217–18. Some Plaintiffs later obtained medical care through military providers, among other sources. 3-ER-222, 227. But their exposure occurred at home through the same basic household activity—using tap water—that exposed civilian residents served by the same water line. 2-ER-114–15; 3-ER-193.

## II. Procedural Posture

### A. Injured servicemembers brought FTCA claims.

The Red Hill contamination produced related FTCA claims by service members, their families, and other affected water users. Three related actions—*Feindt*, *Whaley*, and *Hughes*—were consolidated in the district court. 1-ER-3–4. This appeal concerns the *Whaley* action, which collected the claims of nearly 1,000 service-member Plaintiffs. 2-ER-143. The "Plaintiffs in *Whaley* Action, No. 1:23-CV-00457," Dkt. 2.1, are referred to here simply as Plaintiffs.

### B. The complaint pleads injuries incident to everyday life.

The operative First Amended Complaint was filed on August 11, 2025. 3-ER-170. It pleaded the claim from the underlying events through the elements of liability: the May and November releases; the path of contamination into the drinking-water system; the alleged operating, maintenance, testing, and warning failures; the resulting injuries; and representative plaintiff histories. 3-ER-194–95. It then pleaded five FTCA theories—negligence, negligent undertaking, nuisance, negligent infliction of emotional distress, and premises liability—and separately addressed causation, the FTCA's exceptions and prerequisites, and damages. 3-ER-195.

### C. The district court held that *Feres* bars all relief.

The United States moved under Rule 12(b)(1) to dismiss the First Amended Complaint for lack of subject-matter jurisdiction, arguing that *Feres* barred the claims as arising incident to military service. 2-ER-138–65. Plaintiffs opposed the motion, and the United States replied. 2-ER-108–37; 2-ER-87–107. The district court issued an inclination to grant the motion and identified issues for the parties to address at oral argument. 2-ER-80–86. After argument, 2-ER-48–79, the district court granted the motion, concluding that the Plaintiffs' claims were incident to military service and therefore barred by *Feres*. 1-ER-3–32. Final judgment followed. 1-ER-2.

Plaintiffs timely appealed. 5-ER-713.

## Summary of the Argument

The FTCA generally permits tort suits against the United States. *Feres v. United States*, 340 U.S. 135 (1950), carved out a judicial exception for injuries to servicemembers that arise out of or in the course of activity "incident to service." *Id.* at 146. The resulting doctrine has justified that exception by reference to features of military service absent from ordinary civilian life: the distinctly federal relationship between servicemembers and the Government, the military compensation system, and the concern that civilian tort litigation could intrude upon military orders, discipline, and judgments made in the course of duty. *See United States v. Johnson*, 481 U.S. 681, 688–91 (1987); *United States v. Brown*, 348 U.S. 110, 112 (1954). Those asserted concerns help define the *Feres* doctrine's domain. They do not make every injury suffered by a servicemember incident to service.

*Feres* does not bar Plaintiffs' claims. The keystone test lets the bar apply only when a servicemember's injury arises from activity "incident to service." Here, the totality points the other way. Plaintiffs were off duty—many on Thanksgiving leave—at home drinking water, cooking, showering, and bathing their children. Civilians lived in the same communities and consumed water from the same system. And the alleged negligence arose from ordinary operational failures, not from any military mission performed by Plaintiffs.

This Court evaluates whether an injury was "incident to service" by considering the totality of the circumstances through four nonexclusive factors: the place of the tort, the servicemember's duty status, the benefits accruing from military status, and the nature of the activity at the time of injury. *Johnson v. United States*, 704 F.2d 1431, 1436–40 (9th Cir. 1983). Those factors confirm that *Feres* does not apply here. Most important, the nature of Plaintiffs' activity was purely personal and civilian-equivalent. Their duty status likewise cuts against *Feres* because they were not acting under orders or performing military duties. The situs factor carries little weight because the fuel depot had no meaningful connection to Plaintiffs' own service, and the benefits factor does not transform publicly shared water and civilian-accessible housing into military privileges.

The district court reached the opposite result only by erroneously redefining Plaintiffs' actual activities as the broader circumstance of "residing in military housing"—a move that turns military status into a but-for rule. That cannot be the test because military service will nearly always explain why a servicemember happens to be in a particular place or using a government-provided facility. Simply treating that causal antecedent as dispositive collapses the required activity-specific, totality-of-the-circumstances inquiry into military status alone.

Precedent opposes applying *Feres* here. *Johnson* (9th Cir. 1983) itself, plus also *Dreier* (9th Cir. 1997), *Schoenfeld* (9th Cir. 2007), *Spletstoser* (9th Cir. 2022), and *Green* (9th Cir. 1993), each reject mechanical reliance on military status, location, or background circumstances where the servicemember was engaged in civilian-equivalent personal activity. The district court misread those cases and instead relied heavily on Camp Lejeune decisions from other circuits. But those cases involved materially different circumstances and do not displace this Circuit's own emphasis on civilian access, personal activity, and the absence of a genuine military-service nexus. The most critical point to the *Feres* analysis can be stated simply: the Ninth Circuit looks to the activity, not the activity's location. *Spletstoser* proves that: the military sent the plaintiff to the conference and paid for her lodging, yet the Court allow the claims after asking what she was actually doing when injured.

The district court's broader approach proves too much. If *Feres* applies whenever military service explains why a plaintiff lived somewhere or why the Government supplied the facility or utility involved, virtually every ordinary injury in military-provided housing becomes incident to service. That is not the fact-specific inquiry that existing precedent requires. And as many jurists have already rightly realized, there is certainly no justification for *extending Feres* beyond its existing confines.

What matters is the actual activity—not simply the location or who paid for it. Plaintiffs were off duty, under no orders, and on no military mission. They were doing the same things any civilian does at home, in housing with water civilians could also use. *Feres* does not convert ordinary family life into military service merely because the people living it wore a uniform. The Court should reverse the district court and revive these valid FTCA claims.

## Argument

Plaintiffs challenge the district court's Rule 12 decision to dismiss their complaint's Federal Tort Claims Act claims as barred by *Feres v. United States*, 340 U.S. 135 (1950). *See* 3-ER-170 (live complaint); 2-ER-138 (motion); 2-ER-109 (response); 2-ER-87 (reply); 2-ER-48 (hearing transcript); 1-ER-3 (decision). The decision should be reversed because *Feres* does not bar these claims.

This Court reviews de novo whether the *Feres* doctrine bars Plaintiffs' claims. A motion to dismiss under *Feres* is treated as a Rule 12(b)(1) motion for lack of subject-matter jurisdiction, and the doctrine's application presents a question of law reviewed de novo. *E.g.*, *Spletstoser v. Hyten*, 44 F.4th 938, 943 (9th Cir. 2022); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1997). The district court's conclusion that Plaintiffs' injuries were "incident to service" therefore receives no deference. *See, e.g.*, *Schoenfeld v. Quamme*, 492 F.3d 1016, 1019 (9th Cir. 2007).

Because the Government mounted a facial jurisdictional challenge, 2-ER-116, the Court accepts the First Amended Complaint's factual allegations as true and construes them in Plaintiffs' favor. *See, e.g.*, *Spletstoser*, 44 F.4th at 943; *Dreier*, 106 F.3d at 847. Thus, the question is whether, on the facts alleged in the First Amended Complaint, 3-ER-170, Plaintiffs' injuries arose "incident to service" within the meaning of *Feres*. They did not.

## I. *Feres* does not bar Plaintiffs' claims.

The Federal Tort Claims Act waives the United States' sovereign immunity for specified tort claims and makes the Government liable, subject to statutory exceptions, in much the same manner as a private person. *See* 28 U.S.C. § 1346(b)(1). Plaintiffs pleaded ordinary FTCA claims for negligence and related torts arising from the contamination of their drinking water. 3-ER-195. No statutory exception resolves those claims here. The supposed obstacle is instead *Feres*—the judicially created doctrine holding that the FTCA does not permit recovery for injuries to servicemembers that "arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950).

The doctrine has been justified principally by concerns distinctive to military service, including military discipline and decisionmaking. But *Feres* does not bar every tort claim brought by a servicemember. *Johnson v. United States*, 704 F.2d

1431, 1436 (9th Cir. 1983), supplies the framework for drawing that line. Courts consider the totality of the circumstances through four factors, with "the nature of the plaintiff's activities at the time of the government's tortious action" as the "most important line of inquiry." *Id.* at 1436.

Several key precedents illustrate the critical distinction correctly. Injuries suffered while carrying out assigned military duties present the paradigm case for *Feres*; but in *Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022), this Court held the doctrine inapplicable—even though the plaintiff was on active duty, attending a military-sponsored conference, and lodged there at government expense—because she was engaged in the purely personal activity of preparing for bed in her private hotel room when the alleged assault occurred. *Id.* at 954–58. The critical question is therefore not simply whether military service explains the plaintiff's presence or circumstances, but what the servicemember was actually doing and how that activity related to military service.

Plaintiffs' injuries do not meet that test by any measure, whether viewed through the totality of the circumstances, the *Johnson* factors, or the most analogous precedent. In every relevant respect, their injuries were not "incident to service," and *Feres* therefore does not bar their claims.

### A. The totality of circumstances—especially *Johnson* factor four—shows that these injuries are not "incident to service."

The *Johnson* factors are guideposts for a fact-specific inquiry, not independent rules applied in isolation. They "cannot be blindly applied," *Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir. 1983), and the Court must consider the totality of the circumstances and the Ninth Circuit cases most closely analogous. *Schoenfeld*, 492 F.3d at 1019–20, 1023; *Spletstoser*, 44 F.4th at 953.

The district court's analysis gave outsized weight to background circumstances—Plaintiffs' military status and connection to military housing and Navy water—rather than asking how the circumstances of the injuries themselves related to military service. That approach obscured the considerations Ninth Circuit precedent treats as central, including the nature of Plaintiffs' actual activities, their duty status, civilian access, and whether adjudication would intrude on military discipline or judgment. Properly framed, those considerations point away from *Feres*.

The totality of the circumstances shows that *Feres* does not apply. Plaintiffs were off duty, many on holiday leave, and at home engaged in ordinary family life. Civilians lived in the same communities and used the same water; the alleged negligence arose from civilian employees' operational failures; and adjudicating those failures does not require second-guessing military discipline or command. 3-ER-192–93, 198–200. The *Johnson* factors test those circumstances from different

angles, and none supplies the military-service nexus that the underlying facts lack. The sections that follow address each factor in turn.

#### 1. The "nature of the activity" factor opposes applying *Feres*.

The fourth *Johnson* factor weighs the nature of the plaintiff's activities at the time of the tort. *See, e.g., Spletstoser v. Hyten*, 44 F.4th at 957-58. It comes first in the analysis because it should predominate. The Ninth Circuit repeatedly treats "the nature of the plaintiff's activities" as the most important part of the *Feres* inquiry because it most directly tests whether adjudication would intrude on military discipline. *Johnson*, 704 F.2d at 1436-39; *Schoenfeld*, 492 F.3d at 1023. Here, that factor is controlling in practical effect: Plaintiffs were off duty, at home, performing ordinary civilian-equivalent household activities, under no orders, and on no military mission. Once those activities are correctly identified, the remaining factors cannot convert them into service-related conduct.

The district court held that this factor supported application of *Feres* because it treated Plaintiffs' showering, bathing their children, cooking, and other personal activities as subcomponents of the broader activity of residing in military housing and concluded that the claims implicated military judgment and discipline. 1-ER-22-30 (accepting the government position briefed at 2-ER-161–164). But as

Plaintiffs rightly showed below, 2-ER-125–129, this factor when properly applied does not support application of *Feres* here.

#### i. Plaintiffs were engaged in ordinary civilian household activity.

This factor strongly opposes application of *Feres* because Plaintiffs were at home doing the most ordinary things people do at home: Drinking, bathing, cooking, and cleaning with home water. 3-ER-193 (FAC at xxiii); 3-ER-221 (FAC ¶72); 3-ER-224 (FAC ¶79). They were not carrying out orders or taking part in any military-sponsored program. 3-ER-193 (FAC at xxiii). Litigating whether the Navy negligently contaminated a water system threatens military discipline no more than the identical suit brought by the civilians living on the same water line who drank the same water.

#### ii. The district court defined the relevant activity at the wrong level of generality.

The district court's contrary holding weighed this most important factor in favor of application of *Feres*. 1-ER-22–30. Its central move was to disregard what Plaintiffs were actually doing and redefine all of their household activities as one military activity:

> Plaintiffs' focus on activities such as preparing Thanksgiving dinner and bathing, which constitute personal activities that – in the abstract – do not relate to military service, are all subcomponents of one activity, i.e., residing in military housing, which led to the Whaley Plaintiffs' alleged injuries.

1-ER-23. That reframing is the core error.

The Ninth Circuit asks what the servicemember was actually doing when injured—not whether that activity can be folded into some broader circumstance traceable to military status. *Johnson* examined bartending; *Schoenfeld*, riding in a car on weekend liberty; and *Spletstoser*, preparing for bed in a hotel room, even though military service brought her there for a STRATCOM conference and paid for her lodging. *Johnson*, 704 F.2d at 1439–40; *Schoenfeld*, 492 F.3d at 1025–26; *Spletstoser*, 44 F.4th at 957–58. The housing fact was therefore no less present in *Spletstoser* than it is here: the Government provided the lodging because of military service, yet the Court still focused on the plaintiff's personal activity rather than who supplied or paid for the room.

The district court's approach would erase the fourth factor whenever a servicemember lives in military housing. Sleeping, eating, bathing a child, and drinking water would all become military activities because each is a "subcomponent" of residing there. Ninth Circuit precedent rejects that kind of absolutist reasoning. *See Schoenfeld*, 492 F.3d at 1025–26; *Dreier*, 106 F.3d at 853–54.

Properly framed, application of this factor is straightforward. Plaintiffs were off duty, many on holiday leave, performing no military mission and obeying no military order. 3-ER-193. They stood "in exactly the same position as a civilian" and could just as readily have been injured without ever wearing a uniform. *Spletstoser*, 44 F.4th at 957 (quoting *Johnson*, 704 F.2d at 1439). If bartending in *Johnson* and preparing for bed in *Spletstoser* were "purely personal," then bathing children and preparing Thanksgiving dinner at home are at least as personal.

**iii. These claims do not implicate protected military judgment or discipline.**

Nor does litigating these claims threaten military discipline through the "close military judgment calls" that *Feres* protects. The alleged releases began with ordinary operational failures by civilian federal employees. 3-ER-198–200. *Spletstoser* expressly identifies *Dreier*'s negligent oversight of an on-base water-treatment plant as conduct that did not involve such military judgment. 44 F.4th at 957 n.5; *Dreier*, 106 F.3d at 853–54. The district court instead relied on the military character of

broader operations and collateral allegations about later loss of trust. 1-ER-27–30. But factor four asks whether Plaintiffs' activities were the sort whose litigation threatens military discipline. Drinking contaminated water at home was not.

### 2. The "place of the tort" factor opposes applying *Feres.*

The first *Johnson* factor weighs the tortious act's location. *See, e.g., Spletstoser*, 44 F.4th at 953-54. The district court held that this factor supported applying *Feres* because the negligence occurred at Red Hill and, in its view, Plaintiffs' presence at JBPHH, residence in military-provided housing, and receipt of Navy-provided water all resulted from their military service. 1-ER-12–14 (accepting the government position briefed at 2-ER-157–158). But as Plaintiffs rightly showed below, 2-ER-129–132, this factor when properly applied is insignificant.

#### i. Red Hill's location bears little relationship to Plaintiffs' military service.

This factor—place of the tort—is insignificant because Plaintiffs encountered the contamination in family homes, not while performing duties at Red Hill. Fuel escaped from the facility into a public water system and reached their homes, most of which were off base in areas accessible to the public. 3-ER-192–193. 3-ER-170. Those family-housing communities included civilian residents and were managed by private landlords, rather than operated as military barracks. 2-ER-130–132. 2-ER-109. Red Hill was an industrial fuel-storage facility, and civilian employees ran

it. 3-ER-199–200 (FAC ¶¶11, 14). The only thing meaningfully linking Red Hill to these Plaintiffs is the water line, which connected to many civilians' homes as well.

The district court's contrary holding weighed the place of the tort heavily in favor of applying *Feres*. 1-ER-14-15. It reasoned that this case lacked the civilian-equivalent circumstances present in *Johnson*, *Dreier*, and *Schoenfeld*:

> Although the Ninth Circuit in several cases has refused to afford much weight to this factor when a military service member is leaving a base on liberty, see, e.g., *Schoenfeld v. Quamme*, 492 F.3d 1016, 1023 (9th Cir. 2007) (riding in a car going off base during weekend liberty), or when taking part in activities that are open to civilians or could be undertaken by civilians, *see, e.g.*, *Dreier v. United States*, 106 F.3d 844, 852-53 (9th Cir. 1996), *as amended* (Feb. 4, 1997) (drinking beer and swimming at a civilian-accessible location on base while on liberty); *Johnson*, 704 F.2d at 1437 (working as a bartender in a club on base), neither circumstance is present in this case. Accordingly, the first factor weighs in favor of applying the *Feres* doctrine to bar the *Whaley* Plaintiffs' claims against the United States.

*Id.*

The district court's premise is factually wrong. At minimum, this case entails the very circumstance identified in *Dreier* and *Johnson*—participation in activities "open to civilians or [that] could be undertaken by civilians." 1-ER-14. Plaintiffs encountered the contaminated water while drinking, showering, bathing children, brushing their teeth, cooking dinner, and performing other ordinary household tasks. 2-ER-129–130. Those activities are no more military than bartending in *Johnson* or drinking beer and swimming in *Dreier*. Indeed, civilians were not merely *capable of*

doing the same things; civilians did in fact live in the same housing communities and use the same water. 2-ER-130–132. The district court thus denied the existence of the very circumstance the record establishes.

The key precedents are therefore directly instructive here. *Johnson* stressed that the serviceman occupied "the same position" as a civilian employe, *Johnson*, 704 F.2d at 1438; *Dreier* likewise held that an off-duty serviceman drinking and swimming on base occupied the same position as a civilian engaged in those leisure activities, *Dreier*, 106 F.3d at 853; and *Schoenfeld* treated ordinary driving on an accessible base road the same way, *Schoenfeld*, 492 F.3d at 1024–25. Plaintiffs stood in precisely that civilian-equivalent position when they turned on their taps at home. The Navy's ownership of Red Hill, the water line, or some of the housing does not transform drinking water or washing a child into military activity.

**ii. The district court applied this factor too mechanically.**

The district court's reasoning erroneously reduces the analysis into a but-for causation analysis: because Plaintiffs' military service brought them to Hawai'i, military housing, and Navy-supplied water, their injuries were incident to service. But *Johnson* rejects that kind of mechanical situs analysis. *See Johnson*, 704 F.2d at 1436–37.

The relevant question is not whether military service placed Plaintiffs somewhere in the causal chain, but whether the situs of the negligence bore a meaningful relationship to their military service. It did not. With one exception, Plaintiffs did not work at Red Hill, its operation had nothing to do with their military duties, and they encountered its negligence only after contamination traveled into their homes while they were off duty performing ordinary household activities. 2-ER-129–130. The military character of Red Hill cannot substitute for a service connection that otherwise does not exist. The first factor therefore deserves little, if any, weight in favor of applying *Feres*.

### 3. The "duty status" factor opposes applying *Feres*.

The second *Johnson* factor weighs a plaintiff's duty status at the time of the tort. *See, e.g., Spletstoser*, 44 F.4th at 953-54. The district court held that this factor supported applying *Feres* because Plaintiffs were active-duty service members and it characterized the relevant activity as quartering in military housing and using military-provided water utilities, which it deemed inextricably linked to their active-duty status. 1-ER-15–18 (accepting the government position briefed at 2-ER-157-158). But as Plaintiffs rightly showed below, 2-ER-133–134, this factor when properly applied does not support applying *Feres*.

#### i. Plaintiffs were off duty and engaged in ordinary family life.

The duty status factor does not support applying *Feres* because Plaintiffs were off duty, and many were on holiday leave, when the contaminated water reached their taps. 3-ER-193 (FAC at xxiii). They were home with their families for Thanksgiving. They were not at work, and they were not under orders. *Id.*; 3-ER-219 (FAC ¶64). Major Feindt, Chief Warrant Officer Thompson-Watson, Chief Petty Officer Jessup, and Petty Officer Wallace each spent Thanksgiving leave using the water at their homes. 3-ER-221 (FAC ¶72); 3-ER-224 (FAC ¶79); 3-ER-227 (FAC ¶86); 3-ER-229 (FAC ¶93). Wallace's family fell ill on Thanksgiving night. 3-ER-229 (FAC ¶93). Nothing they were doing depended on their duty status. Their household water use was not directed by military orders, undertaken for a military mission, or part of military-sponsored recreation. 3-ER-193. 3-ER-170.

#### ii. Active-duty status cannot substitute for a service-related activity.

The district court's contrary holding weighed duty status solidly in favor of applying *Feres*. 1-ER-15–18. It reasoned that:

> … Plaintiffs' reliance on cases such as *Johnson* and *Spletstoser* is unavailing. The plaintiffs in those actions were engaged in activities that did not relate in any relevant way to their military duties. For instance, in *Johnson*, the plaintiff's work as a bartender, *i.e.*, the activity that led directly to his injury, did not bear any relevant relationship to his military duty as a noncommissioned officer in the Air Force, *see* 704 F.2d at 1433, or "to the military disciplinary structure that the Feres

> doctrine was meant to safeguard," *id.* at 1438 (citation omitted). In *Spletstoser*, the plaintiff's active-duty service status did not bear on the relationship between the activity leading to her injury, *i.e.*, "preparing for bed in her private hotel room" shortly before she was allegedly sexually assaulted by a superior, and her military service. *See* 44 F.4th at 955; *see also id.* at 942 (describing the incident). In contrast, here, the Whaley Plaintiffs were active-duty service members occupying military housing provided to them as a direct consequence of their active-duty status. The activities leading to their injuries, *i.e.*, utilizing military housing and water utilities, are inextricably linked to their active-duty military service. Therefore, the second factor weighs in favor of applying the *Feres* bar.

*Id.*

The district court's distinction is backwards. *Spletstoser* is the flagship example of why active-duty status cannot do the work the court assigned it. Colonel Spletstoser was indisputably on active duty, and she was at the hotel because she and General Hyten, her superior officer, were attending a forum on behalf of STRATCOM. Yet the Ninth Circuit held that duty status weighed against *Feres* because, when the injury occurred, she was in her private room preparing for bed—"in the same position as any civilian would have been." *Spletstoser*, 44 F.4th at 954-55. The same is true here. Military service may explain why Plaintiffs were living where they were, but when the contamination injured them they were home drinking water, cooking Thanksgiving dinner, and bathing their children—not performing military duties. 2-ER-133–134.

The district court reached the opposite result only by redefining the relevant activity as "utilizing military housing and water utilities." 1-ER-17–18. But that simply converts duty status into a but-for test: because military service helped place Plaintiffs in those homes, everything they did there becomes "inextricably linked" to service. *Spletstoser* forecloses that analysis. The question is whether the activity being performed was related in some relevant way to military duties, not whether military status helps explain why the servicemember happened to be there. *Id.* at 954–55. Plaintiffs stood in the same position as civilian householders using tap water in their homes. The second factor therefore does not support applying *Feres*.

*Johnson* makes this point especially clear. An off-duty servicemember does not become more "incident to service" because he goes home rather than works a civilian-style side job. If bartending after hours is sufficiently disconnected from military duty, *Johnson*, 704 F.2d at 1437–38, then cooking Thanksgiving dinner, bathing children, and drinking water at home are at least as disconnected. Application of *Feres* cannot turn on whether a servicemember spends personal time moonlighting or simply living ordinary family life.

#### 4. The "service benefits" factor opposes applying *Feres*.

The third *Johnson* factor weighs benefits accruing due to a plaintiff's status as a service member. *See, e.g.*, *Spletstoser*, 44 F.4th at 955-56. The district court held that this factor supported application of *Feres* because it treated both Plaintiffs' entitlement to military medical and statutory benefits and their military housing and Navy-provided water as benefits derived from military service. 1-ER-17–22 (accepting the government position briefed at 2-ER-158–161). But as Plaintiffs rightly showed below, 2-ER-134–135, this factor strongly opposes applying *Feres*.

##### i. The relevant housing and water were not exclusive military benefits.

This factor—benefits accruing due to a plaintiff's status as a service member—strongly opposes applying *Feres* because the tap water that injured Plaintiffs was not a benefit of military service in any meaningful sense. The Navy operated the system as a public water system subject to the Safe Drinking Water Act, serving about 93,000 people. 3-ER-192 (FAC at xxii); 3-ER-205–06 (FAC ¶¶25–27). And the homes were run as a public-private venture. 3-ER-198 (FAC ¶9). Most sat off base in areas accessible to the general public, and Radford Terrace was "off base and accessible by civilians." 3-ER-193 (FAC at xxiii); 3-ER-229 (FAC ¶93). Plaintiffs received the same water, from the same source, on the same terms as the civilians beside them — not a privilege available to them because they wore a uniform.

For this factor's purposes, the existence of a military relationship does not transform every government-provided benefit into a service-related one. The Supreme Court drew that line before *Feres* itself.

*Brooks v. United States*, 337 U.S. 49 (1949), supplies the key point. There, the Supreme Court squarely rejected the Government's argument that servicemembers are categorically excluded from the FTCA, allowing recovery where the injuries had "nothing to do with" the plaintiffs' military service except in the attenuated sense that prior events had placed them there. *Id.* at 51–53. The Court also rejected the notion that compensation benefits displaced the FTCA; they could be credited against recovery, but they did not bar the suit. *Id.* at 53–54.

The district court departed from that rule by treating Plaintiffs' entitlement to military benefits as affirmative support for barring their FTCA claims. 1-ER-19. In doing so, it relied on later cases describing statutory benefits as one rationale for *Feres*. But those cases did not overrule *Brooks* or convert military compensation into an exclusive remedy. *Brooks* therefore remains controlling on the precise point: benefits may coexist with FTCA recovery and cannot, by themselves, turn an otherwise non-service-related injury into one "incident to service." The district court's contrary approach effectively used the existence of benefits to do the work *Brooks* says they cannot do.

### ii. Civilian access is central to the inquiry.

The district court's analysis of this factor misstated the governing inquiry. It held that civilian access is irrelevant to the service benefits analysis so long as Plaintiffs themselves received housing and water because of military status. 1-ER-19–21. But *Spletstoser* says the opposite: the third factor "centers around whether a service member has access to an on-base or government-sponsored activity, event, or service, to the exclusion of the civilian public"; and *Schoenfeld* describes a "clear line" between benefits available only because of military status and those civilians might also access. *Spletstoser*, 44 F.4th at 955–56; *Schoenfeld*, 492 F.3d at 1024–25. Here, civilians lived in the relevant communities, private civilian housing drew from the same Navy water line, and civilians consumed the same water. 2-ER-134–135. Using the Ninth Circuit's stated test, that weighs against applying *Feres*.

Second, the district court defined the supposed "benefit" at the wrong level of generality. The inquiry concerns "the benefit of being permitted to participate in the activity that led to the injury," *Schoenfeld*, 492 F.3d at 1024—not some antecedent benefit that happens to explain why the servicemember was there. The relevant activity here was ordinary household use of tap water, not the abstract receipt of "military housing." That distinction is exactly what *Spletstoser* illustrates. Although military service brought Spletstoser to the conference and her hotel, the

Court asked whether a civilian could have occupied the same hotel room. 44 F.4th at 956. Likewise here, civilians could—and did—use the same water. 2-ER-134–135.

The Ninth Circuit's military-recreation cases reinforce that distinction. *Bon v. United States*, 802 F.2d 1092, 1095 (9th Cir. 1986), *Costo v. United States*, 248 F.3d 863, 865, 867–68 (9th Cir. 2001), and *McConnell v. United States*, 478 F.3d 1092, 1095–97 (9th Cir. 2007), involved recreational benefits furnished through military programs whose use was restricted to servicemembers and other military-connected users or guests—not activities or services generally available to the civilian public. *See Spletstoser*, 44 F.4th at 955–56 (synthesizing those cases). Here, by contrast, the relevant housing and water were available to civilians with no military affiliation. The Government's recreational cases therefore illustrate the very line that places this case outside *Feres*: the supposed benefit was not exclusive to military status.

**iii. Post-injury military benefits do not control the analysis.**

Third, neither *McConnell* nor Plaintiffs' receipt of medical benefits rescues the analysis. *McConnell* involved a military recreational program whose boat rentals were restricted to active-duty members and their families, with civilian guests permitted only when supervised and accompanied by military personnel—the very service-exclusive setting absent here. *Spletstoser*, 44 F.4th at 955–56. And although medical or disability benefits may weigh toward applying *Feres*, *Schoenfeld* expressly holds

that they are not dispositive and do not make the FTCA unavailable; such benefits may instead be offset against any recovery. 492 F.3d at 1024. Thus, at most, post-injury benefits favor the Government on one subcomponent of factor three; the benefit inquiry points the other way.

### B. Precedent shows that these injuries are not "incident to service."

#### 1. *Johnson* (9th Cir. 1983) supports Plaintiffs' claims.

*Johnson v. United States*, 704 F.2d 1431 (9th Cir. 1983), is a highly analogous precedent showing that Plaintiffs' injuries not are incident to service. *See* 2-ER-119-120 (plaintiffs pressing *Johnson* below). *Johnson* upholds the claim for an off-duty servicemember's injuries in an off-base car crash after an after-hours party at an on-base club. *Johnson*, 704 F.2d at 1433, 1438–40.

*Johnson* supplies myriad rules that apply here: situs is *not* dispositive where its connection to military service is tenuous; active-duty status cannot be mechanically applied; civilian-equivalent activities are *not* transformed into military benefits merely because a servicemember performs them; and the decisive inquiry is whether the plaintiff was acting under military orders or on a military mission, rather than standing "in exactly the same position as a civilian" and doing something that "could just as easily" have injured someone who never wore a uniform. *Id.* at 1436-40. Every one of those principles favors Plaintiffs.

The district court misread *Johnson* by accepting its rule but changing the activity to which the rule applied. *Johnson* asks whether the servicemember's actual activity bore a relevant relationship to military duties; the district court instead defined Plaintiffs' activity as "quartering in military housing." 1-ER-15–18. That abstraction does the work *Johnson* forbids: it converts military status and background circumstances into a service connection despite civilian-equivalent, purely personal activity. *Johnson*, 704 F.2d at 1437–40.

### 2. *Dreier* (9th Cir. 1997) supports Plaintiffs' claims.

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1997), is another highly analogous precedent showing that Plaintiffs' injuries not are incident to service. *See* 2-ER-121-122 (plaintiffs pressing *Drier* below). *Dreier* holds that *Feres* does not bar a claim for an off-duty soldier's death in an on-base wastewater drainage channel during personal recreation. *Dreier*, 106 F.3d at 845–46, 853–55.

*Dreier* thus supplies a decisive rule like *Johnson*'s in an even more analogous setting: on-base location is not controlling; off-duty activity indistinguishable from civilian activity weighs against *Feres*; access shared with civilians is not a military benefit; and negligence comparable to that of a private water-treatment plant does not implicate protected military judgment. *Id.* at 852–54. Those principles map directly onto Plaintiffs' claims.

The district court misread *Dreier*. It declared that *Dreier*'s civilian-access circumstance was absent, 1-ER-14, even though civilians lived in Plaintiffs' housing communities and consumed water from the same system. 2-ER-130–32. Red Hill's military ownership cannot override those civilian equivalents.

### 3. *Schoenfeld* (9th Cir. 2007) supports Plaintiffs' claims.

*Schoenfeld v. Quamme*, 492 F.3d 1016 (9th Cir. 2007), is another highly analogous precedent showing that Plaintiffs' injuries not are incident to service. *See* 2-ER-122-123(plaintiffs pressing *Schoenfeld* below). *Schoenfeld* upholds the claim for a Marine's injuries from an unrepaired on-base guardrail during a personal trip on weekend liberty. *Schoenfeld*, 492 F.3d at 1017–18, 1025–26.

*Schoenfeld* shows that active-duty status carries little weight when the servicemember is on liberty and engaged in civilian-equivalent activity; public access cuts against treating the activity as a military benefit; and the decisive question is whether litigation would threaten military discipline or second-guess close military judgment. *Id.* at 1023–26. Here, too, the answer is no.

The district court inverted *Schoenfeld*. It treated civilian access as irrelevant and military-provided housing and water as dispositive service benefits. 1-ER-19–21. But *Schoenfeld* draws the opposite distinction: an activity civilians can also undertake is not a military benefit merely because a servicemember participates in it, and post-

injury military benefits are not dispositive. 492 F.3d at 1024–26. Plaintiffs' ordinary use of publicly shared water falls squarely on *Schoenfeld*'s civilian side of the line.

### 4. *Spletstoser* (9th Cir. 2022) supports Plaintiffs' claims.

*Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022), is another highly analogous precedent showing that Plaintiffs' injuries not are incident to service. *See* 2-ER-123-124 (plaintiffs pressing *Spletstoser* below). *Spletstoser* upholds the claim for a superior officer's alleged sexual assault of a servicemember preparing for bed in her off-base hotel room. *Spletstoser*, 44 F.4th at 942, 956–59.

*Spletstoser* crystallizes the modern rule that active-duty status is not enough. A court must examine what the servicemember was actually doing, whether a civilian could occupy the same position, whether the relevant activity or service was exclusive to military status, and whether adjudication would intrude on genuine military judgment. *Id.* at 954–58. Each point favors Plaintiffs' position.

The district court's reading of *Spletstoser* misses its central lesson. It distinguished preparing for bed in a hotel from using water in military housing. 1-ER-15–18. But *Spletstoser* itself refused to define the activity by the military circumstances that put the plaintiff there: She was attending a STRATCOM forum, yet the Court focused on what she was actually doing when injured. 44 F.4th at 954–

57. The same approach requires focusing here on drinking, cooking, and bathing—not the antecedent fact of military housing.

The civilian comparator here is concrete, not hypothetical. A civilian could rent in the relevant housing communities, and the same Navy water system supplied Iroquois Point, an entirely civilian neighborhood. 2-ER-58–59. That is the opposite of a benefit available only by virtue of military status.

**5. *Green* (9th Cir. 1993) supports Plaintiffs' claims.**

*Green v. Hall*, 8 F.3d 695 (9th Cir. 1993), is another analogous precedent showing that Plaintiffs' injuries not are incident to service. *See* 2-ER-127-128 (plaintiffs pressing *Green* below). *Green* upholds the claim for a reservist's injuries in an off-base car crash during a breakfast trip before morning formation. *Green*, 8 F.3d at 697–98, 700.

*Green* confirms that military status alone does not make an injury incident to service. An injury is not incident to service merely because military service explains why the plaintiff happened to be there; an off-duty act not undertaken under orders, for military benefit, or on military property is "distinctly nonmilitary." *Id.* at 700. Plaintiffs' ordinary family activities fit that rule comfortably.

The district court's reasoning cannot be reconciled with *Green*. Although the district court did not discuss that case, it repeatedly relied on but-for reasoning—that Plaintiffs would not have been in Hawai'i, in their homes, or using Navy water absent military service. 1-ER-13–14. *Green* rejects precisely that causal logic: a military antecedent is insufficient where the activity itself is "distinctly nonmilitary." 8 F.3d at 700. Ordinary family life at home is no more military than the breakfast trip in *Green*.

**6. Out of circuit cases do not control.**

The district court placed too much weight on Camp Lejeune cases and cases from other circuits. 1-ER-23–27. Those cases involved exposure tied to on-base military housing and did not apply the Ninth Circuit's distinctive emphasis on civilian-equivalent activity, public access, and the servicemember's actual conduct. *See, e.g., Clendening v. United States*, 19 F.4th 421, 428 (4th Cir. 2021); *Gros v. United States*, 232 F. App'x 417, 418-19 (5th Cir. 2007). Here, by contrast, most Plaintiffs lived off base, their housing communities included civilians, and the same Navy water system served civilian users. 2-ER-130–132. Under *Johnson*, *Dreier*, *Schoenfeld*, and *Spletstoser*, those distinctions matter. Camp Lejeune therefore supplies, at most, a loose subject-matter analogy—not the controlling answer in this Circuit as to whether Plaintiffs' injuries were incident to service.

The factual distinctions of the Camp Lejeune plaintiffs are substantial. At Camp Lejeune, the water sources at issue served the base. Here, the Navy system also supplied civilian neighborhoods, including Iroquois Point, and servicemembers themselves could live in civilian housing on that same line. 2-ER-58–59. The housing here likewise was not confined to servicemembers: non-military families could rent in the relevant communities. 2-ER-57–58. And many Plaintiffs' exposure occurred over the Thanksgiving holiday while they were off duty at home drinking, cooking, showering, and bathing their children. 3-ER-193, 221, 224, 227, 229. Those distinctions go directly to the considerations Ninth Circuit precedent treats as important—civilian equivalence, public access, exclusivity of military benefits, and the nature of the servicemember's actual activity.

The district court answered that civilians were also injured at Camp Lejeune. 1-ER-25. But that misses the relevant distinction. Civilian dependents residing in military housing because of their relationship to servicemembers are not the same as members of the civilian public having independent access to the housing and water system. *See Spletstoser*, 44 F.4th at 955–56. Here, civilians without military status could occupy the housing and an entire civilian neighborhood received the same water. 2-ER-58–59. Camp Lejeune therefore shares the subject matter of contaminated water, but not the service nexus that controls the *Feres* inquiry.

### C. The district court erred by driving a plaintiff-focused inquiry with government-focused facts.

The district court's analysis also commits a recurring methodological error. It focuses on the military character of the Government's conduct and assets rather than on whether Plaintiffs themselves were engaged in military activity. But *Feres* asks whether the servicemember's injury arose "incident to service," and *Johnson* makes "the nature of the plaintiff's activities" the central inquiry. 704 F.2d at 1439. The relevant nexus therefore runs between Plaintiffs' injuries and their military service—not between the Government's negligence and a military asset or mission.

The distinction is critical here. The district court repeatedly emphasized that the Navy owned or operated Red Hill and the water system, that Red Hill served a military purpose, that some housing was military-provided, and that the complaint challenged aspects of Navy decision-making. *See*, *e.g.*, 1-ER-12–14, 27–29. Those facts describe the source and setting of the negligence. They do not convert Plaintiffs' drinking water, cooking dinner, or bathing children while off duty into military activity. Otherwise, any injury traceable to a military facility would become incident to service regardless of what the servicemember was actually doing. This is the very kind of categorical reasoning *Johnson* and its progeny reject.

Government-focused facts have only limited roles in the *Johnson* framework. Situs considers where the negligence occurred, but situs is not dispositive. *Johnson*, 704 F.2d at 1436–37. And factor four asks whether adjudication would require second-guessing genuinely military judgments. *Id.* at 1439–40. Neither inquiry permits courts to substitute the military character of the defendant's operations for a military connection in the plaintiff's own activity. Indeed, *Dreier* held that negligence involving an on-base water-treatment plant could resemble negligence by an entirely private facility. 106 F.3d at 853–54.

Nor can the Government's provision or payment for housing itself supply the missing service nexus. The Government also paid for the lodging in *Spletstoser v. Hyten*, 44 F.4th 938, 954–57 (9th Cir. 2022). What mattered there was what the servicemember was doingnot who paid for the place where she happened to be. *Id.*

Once the inquiry is put back where *Johnson* places it, the correct answer follows. Plaintiffs were off duty at home, engaged in ordinary family life, using water also supplied to civilians. 3-ER-192–93. Their activities were not ordered, mission-related, or uniquely military. The Navy's military reason for operating Red Hill cannot manufacture a service nexus that Plaintiffs' own conduct did not have.

### D. Applying *Feres* here proves too much.

The district court's rule has no principled stopping point. If an injury is incident to service whenever military status explains the plaintiff's location or the Government supplied the facility, housing, road, or utility involved, then the plaintiff's actual activity becomes irrelevant. That would collapse the Ninth Circuit's case-specific inquiry into the very but-for rule its precedents reject. Under that approach, a servicemember could lose an FTCA claim for an ordinary household injury simply because the military provided the home or utility, just as one could lose a road-negligence claim because the military maintained the road. But *Dreier* rejected a rationale that would bar "any soldier injured on military property," 106 F.3d at 853, and *Schoenfeld* likewise rejected rules that would make recovery effectively impossible for servicemembers on liberty, 492 F.3d at 1025–26. Those cases preserve a meaningful distinction between military status and military activity.

That distinction controls here. Plaintiffs' service explains background circumstances; it does not transform ordinary family life into military service. If drinking tap water at home while off duty is "incident to service" because the Navy supplied the water, then civilian-equivalent activity, personal time, and the absence of military orders cease to matter at all. That is not an application of *Feres*. It is a categorical immunity that the Supreme Court and this Court have never adopted.

### E. *Feres* should not be extended.

Alternatively, even if this Court concludes that existing precedent does not squarely resolve this case, any doctrinal gap should be resolved by declining to extend *Feres*—not by enlarging it. This Court has applied the doctrine "without relish" while criticizing its extension to situations "far removed from the doctrine's original purposes." *Costo v. United States*, 248 F.3d 863, 869 (9th Cir. 2001); *see also McConnell v. United States*, 478 F.3d 1092, 1098 (9th Cir. 2007). The district court agreed, calling dismissal here "an overly harsh and unjust outcome" and recognizing substantial judicial criticism of *Feres*. 1-ER-30–31. Where precedent runs out, the FTCA's text—not an expanded judicial exception from it—should govern.

That distinction matters because the district court relied heavily on Fourth and Fifth Circuit contaminated-water cases to bridge the gap between binding precedent and this case. 1-ER-23–25. But this Court has said that panels must "align" their decisions with their own precedents, *McConnell*, 478 F.3d at 1095, following the "well-worn path" those precedents establish, *Costo*, 248 F.3d at 869. Here that path runs through *Johnson*, *Dreier*, *Green*, *Schoenfeld*, and *Spletstoser*—the cases emphasizing civilian-equivalent activity, personal time, public access, and the absence of military orders or protected military judgment. Out-of-circuit decisions cannot lengthen that path.

Thus, at minimum, any residual doubt should be resolved in favor of the FTCA's text and not an enlarged judicial exception. *Brooks v. United States*, 337 U.S. 49, 51–53 (1949), confirms that servicemembers are not categorically outside the Act, and no controlling Supreme Court or Ninth Circuit decision extends *Feres* to facts like these: civilian employees contaminated water shared with civilian communities, and Plaintiffs encountered it off duty in their homes. 3-ER-192–93, 198–200.

Existing precedent supplies the answer. On these facts, Plaintiffs' injuries were not incident to service.

## Conclusion

The Court should reverse the district court's judgment by holding that the United States lacks sovereign immunity from Plaintiffs' FTCA claims.

/s Chad Flores
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Lyle Hosoda
Hosoda Law Group
3 Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawai‘i 96813
(808) 524-3700

Frederick C. Baker
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000

Kristina S. Baehr
Just Well Law, PLLC
2606 W 8th Street, Unit 2
Austin, TX 78703
(512) 994-6241

Counsel for Appellants

## Certificate of Compliance

I am the attorney for Appellants. This brief contains 8,374 words, including 0 words manually counted in any visual images, and excluding the items exempted by Federal Rule of Appellate Procedure 32(f). The brief's type size and typeface comply with Federal Rule of Appellate Procedure 32(a)(5) and (6). This brief complies with the word limit of Ninth Circuit Rule 32-1.

s/Chad Flores
Chad Flores
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

Counsel for Appellants